No. 3373.—STATE OF LOUISIANA, ex rel. SAMUEL SMITH & CO., v. THE BOARD OF LIQUIDATORS OF THE FLOATING DEBT OF THE STATE.

The act of the General Assembly approved March 4, 1871, which authorized the Board of Liquidators of the floating debt of the State to exchange a certain amount of bonds of the State for warrants on the State Treasury at a certain rate of discount, by limiting their power of exchange to a certain amount of bonds, vested in them a discretion as to what warrants they would accept in exchange for the bonds placed in their hands for that purpose. The writ of mandamus will not, therefore, lie to compel them to make a pro rata distribution of the bonds in their hands to the different creditors in proportion to the amount of warrants they may respectively hold. 22 An. 318, 611.

The charges of bad faith against the Board of Liquidators can not be judicially inquired into in a proceeding by mandamus to compel them to do a particular thing.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble*, J. *Lea, Finney & Miller*, for relators, appellants. *Armand Pitot* and *Semmes & Mott*, for defendants and appellants.

TALIAFERRO, J. This and several other appeals came up in one record, and all involve the same question. The Legislature of the State, in 1870, authorized the issuing of State bonds for the purpose of taking up the floating debt of the State. These bonds were to be exchanged for debts of the State, under the direction of the Governor, the Auditor, and the President of the Citizens' Bank of Louisiana, to constitute a board for the purposes of the act, to liquidate and redeem all outstanding warrants of the State; and, by an act approved March 4, 1871, the board was authorized and required to exchange the bonds for evidences of debt, at the rate of $100 in bonds for $70 of indebtedness. Under the authority of the statute it seems the board issued the following order:

"To the Citizens' Bank of Louisiana, Fiscal Agent—We have received the following evidences of floating debt of the State of Louisiana—amounting to $359,069 67—to be exchanged for bonds at

seventy cents on the dollar. [List of evidences of floating debt.] We hand you herewith the above mentioned evidences of debt, for which you are directed to deliver over to this board, for distribution to parties interested, $513,000 Louisiana State six per cent. bonds, known as floating debt bonds, now in your possession.

(Signed)  H. C. WARMOTH, Governor.

JAMES GRAHAM, Auditor.

J. G. GAINES,

President Board of Liquidation."

On the eighth of March, 1871, before this order was executed, Samuel Smith & Co., obtained an injunction from the Eighth District Court of the parish of Orleans forbidding the Citizens' Bank, as the Fiscal Agent of the State, to part with or dispose of the bonds in its possession. On the same day the same plaintiffs and others obtained writs of mandamus against the Board of Liquidation, directed to the several members thereof, praying that they be obliged to receive from the various plaintiffs their warrants and certificates of indebtedness, amounting to $165,000, and to deliver to them $235,000 in State bonds, known as floating debt bonds.

The ground of complaint seems to be in all these cases that the Board of Liquidators used partiality, and were governed by favoritism in the action it was about to take in the matter of exchanging the bonds for warrants, there being a much larger amount of warrants and other evidences of State indebtedness presented for exchange than there were bonds to be exchanged, a strong competition arose among the holders of warrants in obtaining bonds for the State securities they held.

An exception was filed in behalf of the defendants, on the ground that there is nothing in the proceedings complained of authorizing the plaintiffs to resort to the writ of mandamus, and on the merits denied their right to the privileges claimed by them. The court below dismissed the rule, and from that judgment the several plaintiffs have appealed.

The act which the members of the board were required to do was ministerial, and from its very nature involved a discretion in them in regard to the manner of doing it. It was not possible for them to exchange bonds with all the holders of warrants. They were beset on all sides by the holders of the State securities, anxious to invest them in bonds, all clamorous to be served and importunate to obtain precedence of each other in exchanging. Before the act of the Legislature was passed authorizing the exchange on the basis of one hundred dollars in bonds for seventy dollars in warrants, it is shown that the president of the bank was repeatedly urged to receive warrants for large amounts in order that they might be first paid as soon as the bill

then before the Legislature to authorize the exchange became a law. This unseemly haste certainly conferred upon those who exhibited it no right to be first served. Other competitors, who by sharp vigilance contrived to be first applicants after the bill became a law, would not thereby, in our judgment, be entitled to greater consideration. But the state of things engendered by the fierce competition placed the Board of Liquidators in a delicate position. They had to exchange the bonds with some of the parties; they could not exchange with all of them. A proposition, it is argued, was made on the part of the plaintiffs to adopt the supposed equitable mode of pro rata distribution. But what right has the board to make a pro rata distribution of the State bonds? They surely would not undertake to proceed in the distribution of those bonds as an administrator would do in distributing the assets of an insolvent estate. Where would be the equity if such a basis were adopted in limiting the division to those only who presented securities for exchange? Other holders, not presenting theirs, would get nothing. In short, a case was presented in which the necessity was forced upon the members of the board to exercise a discretion in performing the duty they had to discharge.

In such a case, this court has several times held that it is without power by mandamus to direct an officer how to perform a duty. If, in the exercise of the discretion he is vested with, he acts in bad faith and fraudulently, to the injury of parties interested, the act might be inquired into in another form of action, but we think it can not properly be done under a proceeding by mandamus.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs. 22 An. 318; *ibidem*, 611.

---

HOWE, J., *concurring.* The true object of the writ of mandamus is to enforce a clear legal right by compelling an officer to perform a legal duty which he has no discretion to decline. The showing made by relators does not authorize such a process. They claimed in their petition, and sought to prove, a right of absolute priority in the distribution of these bonds. This right of priority they signally failed to establish. Having thus failed, they shifted their ground completely, and claimed on equitable considerations a distribution pro rata, and even this they did not do by any amendment of their pleadings, but by a mere verbal request of their counsel. There is no law requiring such pro rata division. The respondents are not the administrators of a dead person, or the assignees of a bankrupt. The equitable right claimed is of very doubtful character, but if it exists, it is not to be enforced by mandamus. The courts of Louisiana, by proceedings *via ordinaria*, accompanied with the conservatory remedies provided in the

Code of Practice, are amply able to protect equitable rights. Hennen's Digest, "Equity," page 480. They will marshal securities and determine priority as to contributions, and the rank of different claimants holding liens on the same fund or estate. They will decree an account of assets, arrest creditors in their race of diligence and force them into the court to litigate their claims together. In these particulars, as in many others, they proceed according to the principles of equity. But they do not proceed by mandamus. Much less do they attempt by mandamus to guide the co-ordinate branches of the government in any matter of mere discretion or good taste.

For these reasons, and those given in the written opinion of the judge a quo, I concur in the decree pronounced.

Rehearing refused.

---

LUDELING, C. J., dissenting. I can not concur in the opinion of the majority of the members of this court in this case.

The object of the writ of mandamus is "to prevent a denial of justice, or the consequence of defective police, and it should therefore be issued in all cases when the law has assigned no relief by the ordinary means, and when justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever." C. P. article 830.

By the act No. 43 of the General Assembly of 1871, it was made the duty of the Board of Liquidators "to settle and redeem all the floating debt of the State created by authority of law, and also all certificates of indebtedness issued prior to the passage of this act, and all past due bonds and past due interest coupons of the State; and for that purpose said board is authorized and required to exchange said bonds for the aforesaid evidences of debt, at the rate of one hundred dollars in bonds for every seventy dollars of indebtedness."

It appears that the amount of warrants presented for exchange exceeded the amount of bonds held by the liquidators, and that they undertook to distribute them arbitrarily to parties who had deposited their warrants with different members of the board.

In my judgment, the law never contemplated conferring such powers on the Board of Liquidators. Before the law, all citizens are equal, and where the bonds were insufficient to absorb the debt for which they were intended to be exchanged, the only rule which should have governed the Board of Liquidators should have been the principle of priority—"the law favors the vigilant." The evidence shows that all the applicants for bonds made application before the law was signed. Therefore all the applications were in fact before the Board of Liquidators at the instant the law came into force, and in point of time all were equal

I think, therefore, that the bonds should have been distributed pro rata among the creditors of the State who asked to exchange their warrants. Justice and reason required that this mode should have been pursued, and I think this court should grant the writ to prevent an abuse of power and a wrong to citizens

HOWELL, J. I concur in the dissenting opinion of the Chief Justice.